IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| N.T. and P.T., individually and as Parent and Next Friend of C.T.,<br>    Plaintiffs,<br><br>v.<br><br>GALESBURG COMMUNITY UNIT SCHOOL DISTRICT NO. 205,<br>    Defendant. | Case No. 4:24-cv-04124-JEH |

**Order**

Now before the Court is Plaintiffs N.T. and P.T., individually and as Parent and Next Friend of C.T.'s Motion for Attorney's Fees and Costs (D. 62).[1] For the reasons set forth *infra*, the Motion is granted.

**I**

Plaintiffs N.T. and P.T., individually and as Parents and Next Friends of C.T., filed their Complaint (D. 1) against Defendant Galesburg Community Unit School District No. 205 (District) and the Illinois State Board of Education[2] on July 15, 2024. The Plaintiffs claimed the District violated the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1401-1409, when it insisted and was insisting that C.T., the Plaintiffs' son then in the middle of first grade, be sent an hour and 15 minutes away to a school in Peoria, Illinois, a segregated school fully isolated from C.T.'s non-disabled peers. C.T., diagnosed with attention deficit hyperactivity disorder, anxiety, sensory disturbance, and other challenges,

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."
[2] The Illinois State Board of Education was terminated from this case on September 23, 2024 pursuant to the parties' Rule 41 Notice of Dismissal of the Illinois State Board of Education (D. 23).

1

began kindergarten at Silas Willard Elementary in Galesburg, Illinois, the local school. Following C.T.'s transfer at his family's request to King Elementary, a Behavior Intervention Plan which resulted from a Functional Behavior Assessment was monitored. After C.T.'s return in November 2023 to Silas Willard to continue in the first grade, an IEP was ultimately developed in December 2023 for C.T. which specified C.T.'s placement in the school in Peoria, a therapeutic day school.

The Plaintiffs then requested and received a due process hearing. After the March-April 2024 hearing, an impartial hearing officer ruled that District 205 had met its obligations under the IDEA, affirming that the Peoria school, or a similar therapeutic setting, was appropriate based on C.T.'s ongoing behavioral challenges and needs, and the Peoria school was the least restrictive environment where C.T. could receive a free and appropriate public education while receiving the intensive, structured support necessary for both behavioral and academic progress. Upon the Plaintiffs filing the instant lawsuit in July 2024 seeking judicial review of the administrative ruling below, C.T. remained at Silas Willard pursuant to a "stay put" provision of the IDEA.

The District filed a Motion for Temporary Restraining Order and Preliminary *Honig* Injunction (D. 6) on July 31, 2024 which prompted several proceedings in court and a responsive brief from the Plaintiffs. After the Motion proceeded to hearing on September 12, 2024 at which the Defendant presented evidence, the Defendant withdrew the Motion and the Court scheduled the matter for the following month for hearing on the merits of the Plaintiffs' Complaint. The parties submitted pretrial memorandums, the case proceeded to a bench trial on October 21, 2024, and the parties filed post-trial memorandums and responses to those memorandums. On December 5, 2024, the Court reversed the April 11, 2024 administrative ruling below, vacated the District's December 2023 IEP, and

ordered the District to create an appropriate IEP for C.T. at Silas Willard. After judgment was entered on December 6, 2024, the Defendant filed its Notice of Appeal (D. 45) on January 3, 2025. Ultimately, on April 17, 2025, the Plaintiffs filed the instant Motion for Attorney's Fees and Costs to which the Defendant responded (D. 66) and the Plaintiffs filed their Reply (D. 68).

## II

Section 1415(i)(3) of the IDEA provides, in relevant part: "In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability". 20 U.S.C. § 1415(i)(3)(B)(i)(I). The District does not dispute the Plaintiffs' "prevailing party" status. *See Linda T. ex rel. William A. v. Rice Lake Area School Dist.*, 417 F.3d 704, 707-08 (7th Cir. 2005) ("A party 'prevails' for purposes of federal fee-shifting statutes when he or she obtains 'actual relief on the merits' of a claim that 'materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'") (quoting *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992)). Section 1415(i)(3)(C) provides, in relevant part: "Fees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Id*. at 437. The "lodestar" amount, once calculated, may be adjusted in limited circumstances. *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012); *see also Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) ("Once the district court has

established the lodestar, the court may adjust it to account for factors not subsumed by the lodestar calculation.") (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552-53 (2010)).

Here, the Plaintiffs seek to recover their lodestar of $245,170.50 for 516.10 hours their counsel, Hughes Socol Piers Resnick and Dym, Ltd. (HSPRD), worked at HSPRD's standard 2024 hourly rates on this federal court litigation.

### A

The Seventh Circuit Court of Appeals has stated its "preference" to compensate attorneys under fee-shifting statutes in civil rights legislation "for the amount that they would have earned from paying clients, *i.e.*, the standard hourly rate." *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 743 (7th Cir. 2003). An "attorney's actual billing rate for comparable work is presumptively appropriate to use as the market rate." *Id.* Here, two HSPRD attorneys worked on this case: Charles D. Wysong and Caryn C. Lederer. Attorney Wysong's 2024 standard billing rate was $465 per hour whereas Attorney Lederer's 2024 standard billing rate was $525 per hour.[3]

Attorney Wysong, who worked on this federal litigation from beginning to end, graduated from law school in 2012, previously clerked for a Seventh Circuit judge and worked for Equip for Equality where he assisted more than 200 families and students with disabilities in education disputes including special education proceedings as well as disputes relating to discrimination and discipline, and, at HSPRD where he is a shareholder, continues to represent students and families in special education, education, and discrimination claims. He has repeatedly litigated discrimination claims against the City of Chicago and represents whistleblowers in litigation around the country. HSPRD Attorney Lederer was

---

[3] Their respective 2025 standard billing rates are $485 and $545. Pls.' Ex. B Wysong Decl. ¶12 (D. 62-1 at ECF p. 8); Pls.' Ex. C Lederer Decl. ¶9 (D. 62-1 at ECF p. 33).

brought into this case after the Defendant filed its Motion for Temporary Restraining Order (TRO). Due to such filing the Court set an expedited briefing and hearing schedule. Attorney Lederer graduated from law school in 2004, previously worked as a litigation associate in a New York office and in the Special Litigation Unit of New York Legal Assistance Group where she litigated impact litigation and class actions on behalf of low-income New York residents, and at HSPRD where she is a shareholder and has litigated dozens of civil rights and employment matters.

    Attached to Attorney Wysong's Declaration (D. 62-1 at ECF pp. 6-11) are redacted invoices reflecting the standard billing rates HSPRD used - $465 for Wysong – for hourly-paying HSPRD clients in 2024. In Attorney Lederer's Declaration (D. 62-1 at ECF pp. 30-34), she states HSPRD adjusts its rates upward annually, with Lederer's 2023 standard billing rate at $505 whereas her 2025 standard billing rate is now $545. She cites cases in which other courts approved of HSPRD's standard billing rates. *See, e.g.*, *Jimenez v. GLK Foods LLC*, No. 12-cv-00209 (E.D. Wis. Jan. 23, 2018), Order (D. 209); *Wenckaitis v. Specialty Contactors, Inc.*, No. 20-cv-03743 (N.D. Ill. Sept. 30, 2024), Order (D. 126). To bolster the point that Wysong's and Lederer's 2024 standard billing rates are reasonable, the Plaintiffs include Declarations from practitioners in special education litigation: Olga Pribyl at Equip for Equality, Illinois's largest legal non-profit serving people with disabilities, who charges $550 per hour; and Matthew D. Cohen who represents families in special education disputes and who charges $600 per hour. Additionally, the Plaintiffs attached the Declarations, (D. 62-1 at ECF pp. 67-78), of experienced litigators who attest that they charge even higher rates (between $625 and $850 per hour) to litigate civil rights and discrimination claims.

    Given Attorneys Wysong's and Lederer's Declarations, the Court has no difficulty determining their true billing rates. The Court also has the "next best

evidence" as well – "the rate charged by lawyers in the community of reasonably comparable skill, experience, and reputation." *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996). The Defendant, however, takes issue with Plaintiffs' counsel's redacted invoices as well as the Declarations by fellow practitioners in special education, Pribyl and Cohen. The Defendant argues the Plaintiffs do not assert that clients paying those invoices are families in special education disputes, the fellow practitioners omit concrete evidence that clients actually pay the stated hourly rates, and the Plaintiffs' cited judicially approved fee awards to HSPRD do not involve special education IDEA disputes.

The Defendant goes too far in arguing the Plaintiffs have not presented any "concrete evidence" showing that they and their comparators in the field charge and/or receive payments from clients at or close to the hourly rates claimed here by HSPRD. Def.'s Resp. (D. 66 at ECF pp. 18-19). The case law does *not* require evidence of an attorney's actual billing rate for exactly the same work, but instead for "comparable work". In their Reply, the Plaintiffs clarify that HSPRD does not have different or lower rates for education cases, special education cases, or for representing students; instead, HSPRD charges hourly clients "standard" rates across practice areas. Nor has the Defendant, as the Plaintiffs point out, presented any evidence that the market rates for parent-side special education lawyers is markedly different than for other types of plaintiff discrimination and civil rights litigation. *Compare K.S. v. Bd. of Educ. of Vandalia Cmty. Unit Sch. Dist. No. 203*, No. 16-CV-22-NJR-DGW, 2018 WL 3993628, at *9 (S.D. Ill. Aug. 21, 2018) ("The Court agrees that the complex nature of special education cases *does* justify a relatively higher hourly rate due to the specialization of practitioners . . .".) (emphasis added). In *K.S.*, the court determined Attorney Pribyl's rate of $425 *in 2018* was reasonable for the Chicago area and did not lower that rate for purposes of

awarding attorneys' fees in a case litigated in the Southern District of Illinois. 2018 WL 3993628, at *8.

Similarly, here, the Court finds Wysong's and Lederer's respective hourly billing rates are reasonable, though their firm is located in Chicago. In *Mathur*, the Seventh Circuit explained:

> [I]f an out-of-town attorney has a higher hourly rate than local practitioners, district courts should defer to the out-of-town attorney's rate when calculating the lodestar amount, though if local attorneys could do as well, and there is no other reason to have them performed by the former, then the judge, in his discretion, might allow only an hourly rate which local attorneys would have charged for the same service.

*Mathur*, 317 F.3d at 744 (quotation marks omitted). Here, Plaintiff P.T.'s Declaration (D. 62-1 at ECF p. 3) provides that she sought legal assistance for the education and special education issues facing her child, C.T., that P.T. searched for an attorney in Galesburg, Peoria, Springfield, and throughout central Illinois for an attorney who would take the case, and that P.T. could not locate any attorneys in central Illinois who were able to represent the Plaintiffs at the administrative level. Her Declaration further provides that she again searched for lawyers in central Illinois to take the Plaintiffs' federal case, could not locate anyone in the area, and did not find any law firms willing to litigate the case other than HSPRD. Such inability to locate a "local" attorney coupled with HSPRD's willingness to take on this case and their credentials amount to Wysong and Lederer possessing "qualities which command a premium." *Mathur*, 317 F.3d at 743.

Finally, that the Plaintiffs failed to attach the actual fee agreement between P.T. and HSPRD nor any paid invoices from P.T. is not a critical omission. Plaintiff P.T.'s attached Declaration provides she:

> agreed to pay HSPRD their standard hourly rates, including for 2024 $465 per hour for Charlie Wysong, $525 per hour for Caryn Lederer,

> and $220 per hour for paralegal work. Given the uncertainty and potentially significant time required for federal court litigation, I agreed to pay HSPRD their standard hourly rates, with the agreement that if the work exceeded a threshold, HSPRD would work on a contingency and seek to recover the fees through a fee petition. The case exceeded the threshold.

Pls.' Ex. A P.T. Decl. ¶10 (D. 62-1 at ECF p. 4). Attorney Wysong's Declaration echoes those statements. The Court rejects the Defendant's attempt to undermine the presumptive reasonableness of Plaintiffs' counsel's hourly rates merely because the Plaintiffs agreed to pay and are paying HSPRD "their full standard hourly rate and expenses for this litigation, up to a threshold amount. Beyond that amount . . . HSPRD is working on a contingency basis." Pls.' Ex. B Wysong Decl. ¶19 (D. 62-1 at ECF p. 10). HSPRD risked being paid only so much – perhaps $5,000 per the Defendant's hypothetical – with only the *possibility* of recovering attorneys' fees for the full time and effort actually expended on this case. The Plaintiffs prevailed and did so because of the time and effort their attorneys spent on their case. Contingency fee arrangements provide a viable means of encouraging well qualified attorneys to take on cases that no other attorney would (a fact illustrated in this case). The Plaintiffs' counsel should not be punished by the Court reducing their hourly rate because they took this case, in part, on a contingent basis. *See Pickett*, 664 F.3d at 639 ("The lodestar approach forms the centerpiece of attorneys' fee determinations, and it applies even in cases where the attorney represents the prevailing party pursuant to a contingent fee agreement."). To lower the hourly rate here would disincentivize attorneys from taking cases on a contingent fee basis. Moreover, to lower the hourly rate here because of the hybrid fee arrangement would be contrary to the IDEA's fee-shifting provision which is contained therein in order "[t]o ease the financial burden on parents

making claims[]". *T.D. v. LaGrange Sch. Dist. No. 102*, 349 F.3d 469, 471 (7th Cir. 2003).

The Court finds Attorney Wysong's 2024 standard billing rate of $465 per hour and Attorney Lederer's 2024 standard billing rate of $525 per hour are reasonable given the attorneys' credentials, those rates were their standard hourly billing rates in 2024 for comparable work, they were willing to take the case when others would not, and they obtained a favorable outcome on behalf of their clients in this case.

### B

The Plaintiffs seek attorneys' fees for a total of 516.10 hours expended on this case: 350.4 hours by Attorney Wysong; 150.1 hours by Attorney Lederer; and 15.6 hours by Marie Valles, a HSPRD litigation paralegal. The Court must examine whether HSPRD's attorneys exercised "billing judgment" in making their claim that the number of hours they have submitted in their fee request was reasonable. *Spegon v. Cath. Bishop of Chi.*, 175 F.3d 544, 552 (7th Cir. 1999) (citing *Hensley*, 461 U.S. at 434). "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434. Additionally, attorneys must adequately document their time. *People Who Care*, 90 F.3d 1307 at 1314.

The Plaintiffs attached to the instant Motion HSPRD's contemporaneous time records for this case, billed to the tenth of the hour, and they state that counsel omitted time for any tasks of 0.1, removed time spent on necessary work collateral to the federal court litigation, and have petitioned for Wysong's and Lederer's time and not for other attorneys who worked on this matter. Plaintiffs' counsel's time records span 10 pages, clearly identify the date, clearly identify Wysong or Lederer

or Valles, detail tasks succinctly, and further break a given date's tasks into smaller increments (*e.g.*, CDW (Wysong) documented an email for .3, another email for .3, and conference and follow up email for .3 for a total of 0.90 hours on 10/11/2024). Pls.' Ex. H (D. 62-1 at ECF pp. 80-89); *id*. at ECF p. 85.  Nevertheless, the Defendant District seeks a 60% reduction in the compensable number of hours, from 500 to 200 hours.

The Defendant District says it is "baffled" by how a case could proceed with such uncommon efficiency and yet result in 500 hours of legal work.  Def.'s Resp. (D. 66 at ECF p. 4).  The Defendant further argues several points including that Plaintiffs' counsel spent too much time on the TRO request the District made, especially in light of the experience of Plaintiffs' counsel, there was no formal discovery nor any motion practice or protracted disputes prior to or during the trial, and TRO hearing preparation would have positioned Plaintiffs' counsel well for the bench trial in October 2024.  It also argues there is no reasonable justification for how Plaintiffs' counsel could have incurred 40 hours on broadly defined "post-judgment" matters, the Plaintiffs' claim that it took approximately 30 hours to craft their fee petition is unreasonable, and 500 attorney hours by Plaintiffs' counsel is unreasonable when compared to the number of billed hours by the firm who represented the Plaintiffs in the underlying administrative case and when compared to the amount of time expended by the District's previous counsel in this federal court litigation.

Beginning with the last point, the Court does not put much stock in it as "the losing counsel's testimony that he could have done the winning counsel's work in less time, while relevant, is not worth much standing by itself.  If the winning counsel had taken less time, he might not be a [sic] position to ask for attorneys' fees." *Mohr v. Chi. Sch. Reform Bd. of Trs. of Bd. of Educ. of the City of Chi.*, 194 F. Supp. 2d 786, 789 (N.D. Ill. 2002).  The Court has reviewed each of the specific

entries the Defendant highlights in its Response, (D. 66 at ECF pp. 10-11), but the Court does not agree that they reveal duplicative work between two partners at HSPRD, or are otherwise vague, unnecessary, and/or show inefficient use of time. The District also had two attorneys litigate this case until current counsel was substituted in on February 10, 2025. *See Lenard v. Argento*, 808 F.2d 1242, 1245 (7th Cir. 1987) ("The defendants should not have wasted our time . . . with complaining that [the plaintiff] was represented by three lawyers. The defendants were also represented by three lawyers . . .".). The mere fact that a party has more than one attorney working on his/her case does not necessarily mean there was duplication, and certainly not the type of duplication that would warrant a reduction in hours for purposes of the lodestar calculation.

Indeed, Plaintiffs' counsel's entries are sufficiently specific for the Court to understand how the hours listed were spent which, in turn, shows Wysong and Lederer worked efficiently and spent time on necessary tasks. The hours expended, particularly in light of the entries' details, do not appear excessive to the Court, and even if they did, a district court "may not 'eyeball' and decrease the fee by an arbitrary percentage because of a visceral reaction that the request is excessive." *Schlacher v. Law Offs. of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 857 (7th Cir. 2009). To the extent the Defendant argues Attorney Lederer "block-billed", "although 'block-billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice." *Farfaras v. Citizens Bank & Tr. of Chi.*, 433 F.3d 558, 569 (7th Cir. 2006). The Defendant identifies just three instances of block-billing, but in each, Attorney Lederer provided enough specificity to make up for that fact.

The Court is similarly unconcerned with the redactions that appear in those entries. As the Plaintiffs put it, the redactions are "modest", and several are

susceptible to the conclusion that the Plaintiffs' names[4] appear in the unredacted version of the contemporaneous time records. Pls.' Reply (D.68 at ECF p. 8). The others, the Plaintiffs state, were done to preserve privilege and work product, especially since an appeal is pending. There are enough unredacted details in those entries to permit the Court to determine whether the time expended was reasonable in relation to the substance of this litigation.

In addition to the foregoing, the Court finds the hours Plaintiffs' counsel expended in this case reasonable where counsel did the following over the course of less than six months: Plaintiffs' counsel had to quickly absorb an administrative record that was over 1,700 pages long upon HSPRD taking over the case from prior counsel; had to defend against the Defendant's TRO motion filed two weeks after the Plaintiffs filed their Complaint; had to prepare for a hearing on the merits of their Complaint scheduled barely more than a month after the Defendant withdrew its TRO motion; had to litigate a bench trial; and had to file a written submission following the bench trial. Plaintiffs' counsel did so with an outcome fully favorable to their clients. The Court will not delve any further into the Defendant's arguments in support of their hours reduction request because a "request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437.

### C

The Plaintiffs have sustained their burden in establishing the reasonableness of Attorneys Wysong's and Lederer's hourly billing rates and the hours those two attorneys expended on this case. The Defendant District does not argue otherwise as to HSPRD paralegal Valles's hourly billing rate and the hours she expended on this case. *See* Def.'s Resp. (D. 66 at ECF p. 21 n. 7) ("[T]he District does not dispute

---

[4] The Plaintiffs' full names have been redacted in this case from the very beginning. *See* Pls.' Compl. (D. 1).

the 15.6 hours of paralegal work completed by Ms. Valles."). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435; *see also Sommerfield v. City of Chi.*, 863 F.3d 645, 651 (7th Cir. 2017) ("[a] plaintiff who achieves excellent results should receive the entire lodestar, but where a plaintiff has achieved only partial or limited success, the lodestar may be an excessive amount.") (quoting *Montanez v. Simon*, 755 F.3d 547, 556 (7th Cir. 2014)).

The Plaintiffs are entitled to $245,170.50 in attorneys' fees for 516.10 hours expended by their counsel, HSPRD, comprised of: Attorney Wysong's 2024 standard billing rate of $465 per hour for 350.4 hours ($162,936); Attorney Lederer's 2024 standard billing rate of $525 per hour for 150.1 hours ($78,802.50); and Paralegal Valles's 2024 standard billing rate of $220 per hour for 15.6 hours ($3,432).

**D**

The Plaintiffs additionally request an award of pre-judgment interest on their attorneys' fees. "Prejudgment interest is presumptively available to victims of federal law violations." *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 572 (7th Cir. 2003). The purpose of such "is to ensure that an award is fully compensatory." *Ryan M. v. Bd. of Educ. of City of Chi., Dist. 299*, 731 F. Supp. 2d 776, 795 (N.D. Ill. 2010) (citing *City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 198 (1995)).

Pursuant to its discretion, the Court awards prejudgment interest in order to account for the delay in payment. The Court finds such an award especially warranted where the Plaintiffs petition for fees at their attorneys' 2024 rates and their attorneys may not ultimately be paid for some time. The Seventh Circuit's "practice has been to use the prime rate as the benchmark for prejudgment interest" where there is no statutorily defined rate and "the district court [does

not] engage[] in refined rate-setting directed at determining a more accurate market rate for interest." *First Nat'l Bank of Chi. v. Standard Bank & Tr.*, 172 F.3d 472, 480 (7th Cir. 1999). The current prime rate is 7.5%. WSJ MARKETS, https://www.wsj.com/market-data/bonds/moneyrates (last visited Aug. 14, 2025).

The Defendant District argues that *if* the Court determines prejudgment interest is appropriate, it should order such interest to begin no earlier than 30 days following the submission of the Plaintiffs' attorney fee petition on April 17, 2025. Because the Court has determined prejudgment interest is appropriate, it will do as the Defendant suggests. The Plaintiffs are entitled to prejudgment interest on their attorneys' fees award of $245,170.50 at the prime rate of 7.5% starting May 17, 2025. *See Judah M. v. Bd. of Educ. of City of Chi., Dist. 299*, 798 F. Supp. 2d 942, 953-54 (N.D. Ill. 2011) (explaining the court believed it reasonable that in order for the defendant to have a period of time to review the plaintiffs' fee petitions, like a client would have, without being charged interest, the plaintiffs were entitled to prejudgment interest on their fees beginning thirty days after the submission of those petitions to the defendant).

### III

The Plaintiffs additionally seek to recover their costs and expenses as provided by Section 1415(i)(3) and Federal Rule of Civil Procedure 54. *See* FED. R. CIV. P. 54(d) (providing in relevant part that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party."). Specifically, they seek $3,069.85 in costs and expenses, comprised of $1,658.29 in taxable costs[5] pursuant to Rule 54(d)(1) and

---

[5] The Plaintiffs, for completeness, separately filed a Bill of Costs (D. 63) for taxable costs with supporting documentation.

14

$1,411.56 in non-taxable costs. The Defendant District makes no argument in opposition to the expenses sought.

The costs for the complaint filing fee ($405), service of process ($147.64), a transcript (340.60), and half of the hearing transcript fee (split with the Defendant) ($765.05) are permissible under 28 U.S.C. § 1920. *See also Collins v. Gorman*, 96 F.3d 1057, 1060 (7th Cir. 1996) (reasoning that Section 1920 permits "the prevailing party to recover service costs that do not exceed the marshal's fees, no matter who actually effected service[]"). It costs $65 per hour for each item served plus travel costs and any other out-of-pocket expenses when the U.S. Marshals serve process personally. 28 C.F.R. § 0.114(a)(3). The invoice billed to HSPRD itemizing the total balance of $147.64 the Plaintiffs seek for their process service fee for serving the "Stephanie M. Jackson Subpoena" is both in line with the U.S. Marshals' cost (here, $60 plus mileage, paper printing, and rush service) and the $147.64 is not challenged by the Defendant. The Plaintiffs are entitled to $1,658.29 in taxable costs pursuant to Rule 54 and recoverable under the IDEA.

The Plaintiffs' non-taxable costs include $648.61 for Westlaw research fees, $30 for a TransUnion search charge to locate a TRO hearing witness, $401.78 for travel expenses to the TRO hearing in Peoria, Illinois, and $331.17 for travel expenses to the October 21, 2024 bench trial. "What expenses are recoverable as a portion of an attorneys' fee award under fee shifting provisions . . . is a decision within the discretion of the trial court." *Doe v. Purdue Univ.*, No. 4:18-CV-89-JEM, 2023 WL 2734329, at *6 (N.D. Ind. Mar. 31, 2023). "[T]he costs that may be charged to losing defendants [in a fee-shifting case] include those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Greenfield Mills, Inc. v. Carter*, 569 F. Supp. 2d 737, 759 (N.D. Ind. 2008) (quotation marks omitted). The Plaintiffs' non-taxable costs are of the type that are normally charged to a fee-paying client

in the course of providing legal services. Furthermore, the amounts sought are reasonable and are not challenged by the Defendant. The Plaintiffs are entitled to $1,411.56 in non-taxable costs pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(I).

## IV

For the reasons set forth *supra*, Plaintiffs N.T. and P.T., individually and as Parent and Next Friend of C.T.'s Motion for Attorney's Fees and Costs (D. 62) is GRANTED. The Plaintiffs are awarded $245,170.50 in attorneys' fees, $3,069.85 in costs and expenses. The Plaintiffs' Bill of Costs (D. 63) is thus ALLOWED, the amount of which - $1,658.29 – is *included* in the costs awarded herein. The Plaintiffs are awarded pre-judgment interest on their attorneys' fees award at the prime rate of 7.5% starting May 17, 2025. The Clerk is directed to enter an amended judgment.

*It is so ordered.*

Entered on August 15, 2025

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE